W. B. MILLER & R. C. RICHARDSON,
a copartnership, Plaintiffs,

v.

DAHLBERG CO., a Minnesota corporation, and Arthur R. Ferrin,
Defendants.

No. 4–58–Civ–36.

United States District Court
D. Minnesota,
Fourth Division.

April 23, 1959.

Ira C. Peterson, Jr., Minneapolis, Minn., for plaintiffs Miller & Richardson.

John M. Palmer, Minneapolis, Minn., for defendant Dahlberg Co.

Allen McCarthy, Minneapolis, Minn., for defendant Ferrin.

DEVITT, District Judge.

This is an action for rescission of a contract on the ground of fraud. The defendant Dahlberg Company is engaged in manufacturing and selling coin-operated radios specially designed for use in hospital rooms. The radio is mounted at the head of a hospital bed and may be operated from a prone position by placing a dime in the coin slot. The speaker is designed for use under the pillow to mute any noise which might prove bothersome to other patients.

In 1952 the plaintiffs, a co-partnership organized under the laws of Colorado, purchased 241 of these pillow speaker radios through Arthur Ferrin, the other defendant, allegedly a distributor for Dahlberg, but claimed by the plaintiffs to be Dahlberg's agent. The plaintiffs also received an assignment by Ferrin of two lease agreements authorizing the installation, and the exclusive right to space, in Corwin and St. Mary's Hospital, Pueblo, Colorado.

In their complaint, plaintiffs claim that Ferrin, as agent for Dahlberg, made fraudulent representations about and expressly warranted (1) the tamper-proof quality of the coin mechanism of the radios, (2) the range of reception which the radios were capable of getting, (3) the exclusiveness of the lease agreement which Ferrin had secured from Corwin Hospital, and (4) the correctness of the survey allegedly made to determine the number of radios needed, and the suitability of the hospitals for the installation of the radios.

The defendants have filed separate answers. Each claims Ferrin was not an agent, but rather a distributor of the radios for Dahlberg Company. Each denies false representations or breach of warranty.

At the trial and in briefs, the plaintiffs abandoned their claim in so far as it pertains to the radios subsequently installed at St. Mary's Hospital. They state that by failing to make timely demand to rescind that part of the sale they have waived their rights to rescind.

The contract evidencing the agreement of the parties contained a disclaimer clause. [1] and the plaintiffs admit that this clause, apparently adopted in the light of Section 71 of the Uniform Sales Act (M.S.A. § 512.71), prevents their recovery of any damages for a breach of warranty, but they do claim that they are entitled to rescind the contract on the theory of fraud and misrepresentation. The distinction which plaintiffs would draw between cases in which the remedy sought is rescission for fraud rather than damages for breach of warranty, has ample support in the cases. See Speck v. Wylie, 1 Cal.2d 625, 36 P.

---

1. This disclaimer clause appears above the signature of the buyer:

"The buyer acknowledges that he will receive the standard guaranty of the manufacturer, the Dahlberg Company, applicable to the above specified merchandise, this guaranty being printed on the back of this order; and the buyer expressly acknowledges, agrees, and represents that he does not rely and has not relied upon or been induced to make this purchase by any guaranty, warranty or representation, expressed or implied in fact or by law, other than those contained in said guaranty of the Dahlberg Company."

2d 618, 95 A.L.R. 760, 762 and cases cited; see also American Law Institute, Restatement of Agency, Vol. 1, Sec. 260 (1) (2).

The defendants present several defenses in addition to their denial of fraudulent representations, including laches and the absence of any agency relationship between the Dahlberg Company and Ferrin, but the issue can be disposed of without undue prolongation by deciding the question of whether or not the defendants, even assuming an agency relationship between them, made the alleged fraudulent misrepresentations.

The Pueblo, Colorado hospitals apparently serve a large number of patients from nearby industrial facilities, who are skilled mechanics and artisans. It did not take these patient-workmen long to devise ingenious schemes to circumvent the necessity of inserting coins in these radios to cause them to play. They used hairpins and other homespun devices with which to trip the mechanism to effect the desired purpose. These methods of circumvention were quickly passed around to all of the patients in certain wards in the hospital, particularly the fracture ward. The plaintiffs took remedial steps to prevent the operation of these radios without inserting coins. They circled the radios with a padlocked band and installed galvanized iron guards inside the radios. The patients met these preventive measures by new and additional methods to obtain free plays.

It seemed to the court that the ability of these patients to successfully tamper the coin device was the main reason the business venture resulted in failure for the plaintiffs.

The plaintiffs' theory of recovery in this connection is that Ferrin, as agent for Dahlberg, represented that the radios were "trouble-free" and "would give no trouble." There was no testimony of any correspondence or discussion between the parties about the coin device before purchase. There was no evidence upon which a finding could be made that Dahlberg had any reason for thinking that the coin mechanism could be circumvented and it isn't reasonable to suppose that a survey of any kind by Ferrin would evidence that fact. It appeared that these radios had been successfully operated, without circumvention of the coin device, by many other patients in numerous hospitals without any similar experience.

■ The demonstration of the radios at the trial indicated the precision and care with which they were manufactured. The coin mechanism was shielded by a heavy plastic cover which could be removed by a specially designed tool. It is doubtful if Dahlberg Company could have in any manner successfully prevented the mischief which the plaintiffs encountered. It seems to me that these radios were "reasonably fit" for the purpose for which they were made within the meaning of the implied warranty provision of the Uniform Sales Act, (M.S.A. § 512.15) and that there was no conduct on the part of either of the defendants upon which a finding of fraudulent misrepresentation could be based.

■ Plaintiffs also claim that Ferrin, as agent for Dahlberg, represented that the radios had a range of between 500 and 1,000 miles, and that this was not true. Ferrin denies that he made any such representation. It appears that one of the plaintiffs, Miller, is engaged in the retail business in Pueblo in which he sold radios, and had a fairly extensive knowledge of the necessity of at least a 6-tube radio to be able to receive stations outside of the immediate Pueblo, Colorado area. In the course of the preliminary discussions, Ferrin told Miller that Dahlberg radios were 6-tube machines. I do not recall any evidence that Ferrin guaranteed that these particular radios would give any particular reception. But if there was disputed evidence in this respect, there was certainly none upon which the court could make a finding that the defendants made fraudulent misrepresentations about it. At all events, it was not shown that the matter of limited reception of the radios was

accountable in any measure for the failure of the venture.

The plaintiffs also urge that Ferrin deliberately misrepresented that the lease agreements he had negotiated with the two hospitals were exclusive, whereas Corwin Hospital then had another type of coin-operated radio in use, which arrangement continued for more than a year afterward. The evidence showed there were some 50 coin-operated radios in use at Corwin Hospital during the time in question. But Miller, one of the plaintiffs, had been fully advised of this prior to accepting the lease. He said that he took the lease to his attorney, Mr. Keen, for examination before accepting it. Mr. Keen wrote Ferrin on June 30, 1952, that Miller and he had completely discussed the presence of coin-operated radios at Corwin Hospital.

The Administrator of Corwin Hospital also informed Miller that, although she had coin-operated radios in use, she found them unsatisfactory and intended to remove them once the Dahlberg radios were installed. Ferrin had apparently been told the same thing. Moreover, Miller's partner, Dr. Richardson, was a staff member at Corwin Hospital during this period, and should have known that the other radios were in use in some of the wards. On the basis of this evidence, it is impossible to conclude that the defendants made any fraudulent misrepresentations.

It is also claimed by the plaintiffs that the alleged survey made by Ferrin of the number of radios which these hospitals could use was inaccurate. The evidence showed that this was true. But Dahlberg later rectified this by making a refund of some $556 for radios not needed. The plaintiffs accepted this refund. Their acceptance of it constituted a waiver of any action based on the alleged fraudulent representations. Maki v. St. Luke's Hospital Ass'n, 1913, 122 Minn. 444, 142 N.W. 705.

All in all, this was an unfortunate business experience for the plaintiffs, but there was no showing of any breach of warranty and certainly no evidence of fraudulent misrepresentations of any kind by the defendants.

The court will sign findings of fact, conclusions of law, and order for judgment for the defendants. Defendants' attorney will please prepare the same, together with a form of judgment, copy to plaintiffs' attorney.